IN THE UNTIED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 2:08-cr-748-1 |
| | : | |
| IGNACIO LUIS MORALES, | : | |
| Defendant. | : | |

MEMORANDUM OPINION

**Goldberg, J.**                                                                                                        **January 13, 2012**

The issue presented in this case is whether a prior conviction under Pennsylvania's statutory sexual assault law, 18 Pa. C.S. § 3122.1, is a "crime of violence" which would qualify Defendant, Ignacio Luis Morales, as a career offender pursuant to § 4B1.1 of the Sentencing Guidelines. For the reasons set forth below, I conclude that statutory sexual assault is not a "crime of violence" when committed by a nineteen-year-old against a thirteen-year-old.

**I.     Procedural History and Sentencing Guidelines Calculation**

On July 20, 2009, pursuant to an agreement with the Government, Defendant pled guilty to seven drug-related crimes, including distribution of cocaine, cocaine base ("crack") and heroin. The Presentence Investigation Report ("PSR") calculated Defendant's offense level to be 25. Defendant has two prior convictions: in 2002 he pled guilty to statutory sexual assault in violation of 18 Pa. C.S. § 3122.1 (the conviction at issue), and in 2004 he pled guilty to possession with intent to distribute heroin in violation of 35 Pa. C.S. 780-113. Based on these prior convictions,

the PSR calculated six criminal history points, placing Defendant in criminal history category III. With an offense level of 25 and a criminal history category III, the PSR's recommended guideline range is 70-87 months. However, Counts I and III each carry a statutory minimum sentence of ten years. 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(B). Therefore, the minimum sentencing range becomes 120 months.

If Defendant's statutory sexual assault conviction were deemed a crime of violence as defined under U.S.S.G. § 4B1.2(a), he would qualify as a career offender pursuant to § 4B1.1. However, the PSR concluded that statutory sexual assault is not a "crime of violence." The Government disagrees and has objected to this conclusion. (Gov't Objection to the PSR, Doc. No. 68.) Aside from the applicability of § 4B1.1, the parties do not dispute the accuracy of the PSR calculations.[1]

Resolution of the Government's objection will have a significant effect on the sentence. If Defendant is determined to be a career offender, the offense level becomes 34 and he is placed in criminal history category VI. Thus, the sentencing range under the guidelines changes from 120 months to 262-327 months.

**II.     Legal Analysis**

Under U.S.S.G. § 4B1.1(a), a defendant is a career offender if: (1) he was at least eighteen years old at the time of the instant offense; (2) the instant offense is a felony that is either a crime of violence or a drug crime; and (3) the defendant has at least two prior felony convictions for crimes of violence or drug offenses. It is undisputed that Defendant's 2004 conviction for

---

[1] Defendant's sentencing hearing was initially held on September 28, 2011, where counsel for both parties argued their respective positions regarding the application of § 4B1.1. Sentencing has been continued to allow for further briefing and consideration of this issue.

possession with intent to distribute heroin is a qualifying crime under § 4B1.1. The parties also agree that Defendant was convicted in 2002 of statutory sexual assault, which is a felony in Pennsylvania. However, the parties dispute whether his conviction for statutory sexual assault is a "crime of violence" under the career offender guideline.

The term "crime of violence" is defined by § 4B1.2(a) as a crime that "(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." Although the Government admits that statutory sexual assault does not have as an element the use of force—attempted, threatened or otherwise—it argues that the crime fits within the last phrase of subsection (2) of § 4B1.2(a), commonly referred to as the "residual clause," in that it "involves conduct that presents a serious potential risk of physical injury to another." (Gov't. Objection to PSR, at 3-4.)

### A. Application of Formal or Modified Categorical Approach

Precedent instructs that I must first determine whether to apply a "formal categorical" or "modified categorical" approach in determining whether Defendant's prior crime qualifies under § 4B1.2. United States v. Mahone, 662 F.3d 651, 653-54 (3d Cir. 2011). Generally, where the language of the criminal statute is clear, the formal categorical approach is employed. United States v. Siegel, 477 F.3d 87, 90 (3d Cir. 2007). Under this approach, the court "must look only to the statutory definitions of the specified offense, and may not 'consider other evidence concerning . . . the particular facts underlying a conviction.'" Id. (quoting Taylor v. United States, 495 U.S. 574, 600 (1990)).

A modified categorical approach is appropriate where "(1) the language of the particular state statute at issue invites inquiry into the underlying facts of the case, or (2) the disjunctive phrasing of the statute similarly invites inquiry into the specifics of the conviction." Id., at 90-91. In this context, a state statute "invites inquiry into the underlying facts" where it criminalizes both violent and nonviolent conduct. See Shepard v. United States, 544 U.S. 13, 26 (2005) (applying modified categorical approach to determine that indecent assault is a crime of violence). If a modified categorical approach is used, the court may consider "adequate judicial record evidence," such as charging documents, jury instructions, the terms of a plea agreement, or the transcript of a plea colloquy, in addition to the statutory elements of the crime. Id., at 20, 26; Mahone, 662 F.3d at 654.

The prior conviction at issue here is for statutory sexual assault, which is defined as follows:

> Except as provided in section 3121 (relating to rape), a person commits a felony of the second degree when that person engages in sexual intercourse with a complainant under the age of 16 years and that person is four or more years older than the complainant and the complainant and the person are not married to each other.

18 Pa. C.S. § 3122.1

The Government has urged that the Court take a "formal categorical" approach, consider only the statutory elements of § 3122.1, and rule that intercourse with a minor under the age of sixteen by a person who is at least four years older is per se a crime of violence. (Gov't Objection to PSR, at 5.) The Defendant disagrees and argues that I should consider the particular factual circumstances of his relationship with the victim. Specifically, he asks that I consider the victim's testimony, offered at Defendant's sentencing hearing (and subject to the Government's objection),

4

that her sexual relationship with Defendant was consensual and part of a lengthy relationship that ultimately produced two children. (N.T. Sentencing Hearing, 9/28/2011, pp. 34-37.) The victim further testified that her relationship with the Defendant continued for approximately five years and that they remained friends. (Id.)

Undertaking a deeper inquiry into the particular factual circumstances of the underlying conviction as Defendant has advocated, including examination of the victim's testimony at the sentencing hearing, would violate the instructions of both the United States Supreme Court and the Third Circuit. Shephard, 544 U.S. at 16 ("a later court determining the character of an admitted [prior conviction] is generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented."); Siegel, 477 F.3d at 93 (citing Shephard, 544 U.S. at 16-17). The prohibition against examining the surrounding facts of the underlying conviction has also been widely recognized as necessary to avoid unduly complicated sentencing proceedings. See United States v. Shannon, 110 F.3d 382, 384 (7th Cir. 1998) (affirming the district court's refusal to hold an evidentiary hearing to determine whether the conduct underlying the defendant's conviction for statutory rape was forcible). However, that principle does not require limiting the inquiry solely to the statutory elements of the crime. Indeed, several courts have found it appropriate to consider the ages of the defendant and the victim in determining whether statutory sexual assault is a crime of violence. See, United States v. Thomas, 159 F.3d 296, 299-300 (7th Cir.1998) (intercourse between a sixteen-year-old and a twenty-two-year-old is not a violent felony); United States v. Sawyers, 409 F.3d 732, 742 (6th Cir. 2007) ("statutory rape statutes that include more mature victims and do not contain aggravating factors are not subject

to the strict categorical approach"); United States v. Meader, 118 F.3d 876 (1st Cir. 1997) (intercourse by a thirty-six-year-old with a thirteen-year-old is a crime of violence); United States v. McLaughlin, 2006 WL 2562113 at * 5-6 (M.D.Pa. Sept. 5, 2006) ("The complainant's age . . . is an essential element of the crime [of statutory rape] and therefore is an entirely appropriate piece of material for this Court to consider.").

After consideration of the above precedent, I conclude that the factual circumstances of the conviction at issue should not be considered;[2] however, a limited examination into the charged conduct that pertains to the elements of the conviction is appropriate. The crime at issue here, statutory sexual assault, covers a broad range of conduct which may or may not present a serious potential risk of injury. It makes little sense to treat intercourse between an adult and a prepubescent child the same way as intercourse between a thirteen-year-old and a nineteen-year-old. Equal treatment of such divergent conduct is contrary to the principles of just punishment and uniformity that the Sentencing Guidelines were enacted to promote. See U.S.S.G. Ch. 1, Pt. A., Sub. 1.2, 1.3.

Therefore, while the particular factual circumstances underlying Defendant's crime will not be considered, the facts contained in the charging document which formed the basis of his conviction, specifically Defendant's age and that of his victim, will be considered. The Criminal Information for the underlying conviction reflects that on February 1, 2001, Defendant engaged in sexual intercourse with the victim, who was born May 12, 1988, approximately three months before her fourteenth birthday. (Criminal Information, Commonwealth v. Morales, Criminal

---

[2] The Government's relevancy objection to the victim's testimony presented at the sentencing hearing is therefore sustained, and the victim's testimony is excluded and will not be considered.

Action No. 1886-2002, Doc. No. 68-2.)  As of February 1, 2002, Defendant was nineteen years old.[3]

Having set the parameters of what facts will and will not be considered in determining whether Defendant's prior conviction presents a serious potential risk of physical injury, I must next consider whether the Government has shown, by a preponderance of the evidence, that non-forcible intercourse between a nineteen-year-old and a thirteen-year-old falls within the residual clause of § 4B1.2(a)(2), and "involves conduct that presents a serious potential risk of physical injury to another."

B.      What Constitutes A Serious Potential Risk of Physical Injury

Since 2007, the Supreme Court has, on four separate occasions, attempted to provide guidance regarding the meaning of the residual clause, employing a slightly different approach in each case.[4]  The Court's first decision on this issue occurred in James v. United States, 550 U.S. 192 (2007), where the prior conviction at issue was attempted burglary. The Court applied a categorical approach and described the relevant inquiry as "whether the risk posed by [the crime in question] is comparable to that posed by its closest analog among the enumerated offenses."

---

[3]While the Criminal Information does not include Defendant's date of birth, it is included in the criminal complaint, (Doc. No. 68-1), and the PSR, and neither party has contested the accuracy of these documents.  Under these circumstances, it is proper for us to take notice of Defendant's date of birth.  See Siegel, 477 F.3d at 91.

[4] See James v. United States, 550 U.S. 192 (2007); Begay v. United States, 553 U.S. 137 (2008); Chambers v. United States, 555 U.S. 122 (2009); Sykes v. United States, 131 S. Ct. 2267 (2011).  Although these cases interpreted the meaning of "violent felony" in the context of the Armed Career Criminal Act ("ACCA"), the definition in § 4B1.2(a) of the Guidelines is "sufficiently similar to the definition of a violent felony under the ACCA that authority interpreting one is generally applied to the other." United States v. Stinson, 592 F.3d 460, 464 (3d Cir. 2010) (en banc).

Id. at 203.[5] The Court concluded that, similar to burglary, the closest analog, attempting to unlawfully enter a dwelling with the intent to commit a felony is "conduct that presents a serious risk of physical injury to another." Id. In so holding, the Court provided an extensive analysis as to why attempted burglary poses the same risks of physical injury as burglary. The Court explained, "[i]nterrupting an intruder at the doorstep while the would-be burglar is attempting a break-in creates a risk of violent confrontation comparable to that posed by finding him inside the structure itself." Id.

The Supreme Court next addressed the issue in Begay v. United States, 553 U.S. 137 (2008), where it concluded that driving under the influence (DUI) was not a crime of violence. The Court applied a categorical approach and stated, "[in] determining whether this crime is a violent felony, we consider the offense generically, that is to say, we examine it in terms of how the law defines the offense not in terms of how an individual offender might have committed it on a particular occasion." Id. at 141. While the Court recognized that "[d]runk driving is an extremely dangerous crime," it found that DUI was "simply too unlike the provision's listed examples" to fall within the scope of the residual clause. Id. at 142. The Court noted that the enumerated crimes, in addition to being demonstrative of the requisite level of risk of physical injury as set forth in James, are illustrative of the "*kinds* of crimes that fall within the statute's scope." Id. (emphasis added). That said, the Court concluded that DUI differed from the enumerated offenses because DUI does not "typically involve purposeful, 'violent,' and 'aggressive' conduct." Id. at 145. Instead, the Court found that DUI crimes "are most nearly

---

[5] Again, the enumerated offenses set forth in § 4B1.2(a)(2) are burglary of a dwelling, arson, extortion and the use of explosives.

comparable to [ ] crimes that impose strict liability, criminalizing conduct in respect to which the offender need not have had any criminal intent at all." Id.

The Court addressed the meaning of the residual clause for a third time a year later in Chambers v. United States, 555 U.S. 122 (2009), where it held that failing to report to prison did not constitute a violent felony. In so holding, the Court considered both the nature of the conduct involved and the degree of risk that it posed. The Court noted that failing to report amounted "to a form of inaction," and was therefore not purposeful, violent and aggressive conduct. Id. at 128. The Court also deemed it appropriate to look at statistical evidence and found that the conduct at issue was unlikely to result in physical injury. Id. (noting that of 160 cases of failure to report, "none at all involved violence.").

In Sykes v. United States, 131 S. Ct. 2267 (2011), the Court again addressed the meaning of the residual clause, and focused on the amount of risk involved in the underlying conviction at issue as compared to that of the enumerated offenses. In concluding that intentional vehicular flight qualified as a crime of violence, the Court examined the amount of risk created by such an act:

> Risk of violence is inherent to vehicle flight. Between the confrontations that initiate and terminate the incident, the intervening pursuit creates high risks of crashes. It presents more certain risk as a categorical matter than burglary. It is well known that when offenders use motor vehicles as their means of escape they create serious potential risks of physical injury to others. Flight from a law enforcement officer invites, even demands, pursuit. As that pursuit continues, the risk of an accident accumulates. And having chosen to flee, and thereby commit a crime, the perpetrator has all the more reason to seek to avoid capture.

Sykes, 131 S. Ct. at 2274.

In attempting to distinguish Begay, which also involved the dangerous use of a vehicle (DUI), the Sykes opinion narrowed the holding of Begay, stating that the "phrase 'purposeful,

9

violent, and aggressive' has no precise textual link to the residual clause." Id. at 2275. The Court explained that often "the purposeful, violent, aggressive inquiry will be redundant with the inquiry into risk," but it is not dispositive. Id. The Court reasoned that Begay's holding rested on a narrower principal relating to the intent required for conviction, specifically that the conduct at issue in Begay, DUI, was not "purposeful or deliberate" but "involved a crime akin to strict liability, negligence, and recklessness crimes." Id. "By contrast, [vehicular flight from police] has a stringent mens rea requirement." Id. In assessing the level of risk of injury, the Sykes Court also found it appropriate to rely upon statistics to "confirm [its] commonsense conclusion." Id.

Supreme Court precedent on what constitutes "conduct that presents a serious potential risk of physical injury to another" does not provide a clear, bright line rule regarding how to determine whether an underlying conviction qualifies under § 4B1.1. The four different analyses undertaken by the Court are highly fact-specific, and not readily applicable to the conviction at issue here. For instance, the risks involved in police pursuit do not help to shed a great deal of light on whether non-forcible intercourse between a thirteen and nineteen-year-old involves "a serious potential risk of physical injury." Further, while the Court in Sykes discussed all of the tests it had announced in its three prior opinions, it did not specify which test the lower courts should follow. It remains somewhat unclear exactly what level of risk is "serious" enough to categorize a crime as one of "violence." Moreover, it is unclear exactly how Sykes modified the reasoning of Begay, and to what extent a Court should consider whether the crime at issue is similar "in kind" to the enumerated examples. In short, I agree with Justice Scalia's observations in Sykes that the various tests employed in the four Supreme Court cases on this issue have "not made the statute's application clear and predictable." Sykes, 131 S. Ct. at 2287 (Scalia, J., dissenting).

In any event, after careful consideration of the Supreme Court's series of cases, the following principles can be discerned. First, consideration of whether a particular crime falls within the residual clause requires an assessment of the risk of physical injury presented by the conduct involved, as compared to the risk presented by the enumerated crimes. Second, that assessment should be based upon "commonsense," but may also be informed by statistical evidence where appropriate. It is equally clear, however, that the inquiry does not always end with an assessment of risk, but must, in certain circumstances, take into account the level of intent required by the criminal statute at issue. See also United States v. Mahone, No. 10-2305, slip op. at 10 (3d Cir. Mar. 24, 2011) (noting that terroristic threats necessarily involve intentional conduct in holding that threatening to commit criminal homicide is a crime of violence under U.S.S.G. § 4B1.2(a)(1)). Lastly, Begay, limited as it may have been by Sykes, still stands for the principle that the enhancement should not normally apply to crimes that impose strict liability, or are based upon negligence or recklessness rather than knowing or intentional conduct.

    **C.**    **Does Non-Forcible Intercourse Between a Nineteen and Thirteen-Year-Old Constitute a Crime of Violence?**

As neither the Supreme Court nor the Third Circuit has specifically considered whether statutory sexual assault qualifies as a crime of violence, I will consider other persuasive authority. The Government points to opinions by Courts of Appeals for the First, Second, Eighth and Tenth Circuits as support for its position that statutory sexual assault is per se a crime of violence. See United States v. Williams, 529 F.3d 1 (1st Cir. 2008) (interstate transport of a minor for prostitution is categorically a crime of violence); United States v. Daye, 571 F.3d 225, 228-236 (2d Cir. 2009) (categorical approach applied to Vermont sexual assault law); United States v. Scudder,

2011 WL 3331823 (8th Cir. 2011) (categorical approach applied to Indiana sexual assault law); United States v. Reyes-Alfonso, 653 F.3d 1137 (10th Cir. 2011) (categorical approach applied to Colorado sexual assault law). However, the Sixth and Seventh Circuits have employed the modified categorical approach to hold that some statutory sexual offenses are violent felonies, while others are not, depending upon the age of the victim and the difference in age between the victim and the defendant. United States v. Sawyers, 223 Fed. Appx. 475 (6th Cir. 2007) (unpublished) (intercourse by an adult with a fifteen-year-old that was obtained by physical compulsion and extortion was violent crime), abrogation recognized by United States v. Murray, 653 F.3d 367, 379 (6th Cir. 2011); United States v. Thomas, 159 F.3d 296, 299-300 (7th Cir.1998) (Government neglected to present evidence to establish a serious risk of injury to a child of sixteen, but sufficient evidence of such a risk with regard to a thirteen-year-old).

The issue has also been addressed by two district courts within the Third Circuit with different outcomes. United States v. Rondon-Herrera, 666 F.Supp.2d 468 (E.D.Pa., 2009) (Diamond, J.) (concluding sexual intercourse between a thirty-year-old and an eight-year-old was a crime of violence); United States v. McLaughlin, (Jones, J.) 2006 WL 2562113 (M.D.Pa. Sept. 5, 2006) (concluding that the statutory sexual assault of a thirteen-year-old by an individual more than eighteen years old was not a crime of violence).

After consideration of this precedent, I find that the cases relied upon by the Government are distinguishable. In Reyes-Alfonso, the defendant was convicted of an offense that prohibited intercourse that was non-consensual in fact. 653 F.3d at 1142 (citing Colo. Rev. Stat. § 18-3-404). Indeed, the Colorado statute at issue required that the defendant have knowledge of the victim's non-consent. As the Government has conceded, a conviction under Pennsylvania's Statute, §

3122.1, does not require factual lack of consent or that the defendant know that his victim is underage. (N.T. Sentencing Hearing, 9/28/11, pp. 29-30.)  In fact, the offense to which Defendant pled guilty, intercourse with a thirteen-year-old by an individual at least four years older, is a strict liability crime.  18 Pa. C.S. § 3102 (when criminality "depends on a child being below age of 14 years, it is no defense that the defendant did not know the age of the child or reasonably believed the child to be the age of 14 years or older.").

The Eighth Circuit's decision in Scudder is similarly distinguishable in that it rested explicitly on the fact that the defendant's "child molestation convictions [were] for intentional crimes," which is not the case with Pennsylvania's statute.  648 F.3d at 634.  The same distinction applies to the decision of the Tenth Circuit in Sawyers in that the defendant's conduct there was not only intentional, but involved both physical compulsion and extortion.  223 Fed. Appx. at 477.

In nearly all of the remaining cases where courts have found that statutory sexual assault is a crime of violence, at least one of the following two circumstances has been present: a large disparity between the ages of the victim and the defendant; or significant scientific or statistical evidence demonstrating an increased risk of physical injury.  United States v. Sacko, 247 F.3d 21, 23-24 (1st Cir. 2001) (noting that there is "no legal basis for" the conclusion that sex is physically dangerous for a fourteen year old girl without sufficient "studies or medical journals . . . entered into the record."); Thomas, 159 F.3d at 299  (noting its prior decision in Shannon, 110 F.3d 382, was based on "medical literature which indicated that a 13 year old is unlikely to appreciate fully or be able to cope effectively with the disease risks and fertility risks of intercourse."); Rondon-Herrera, 666 F.Supp.2d 468 (E.D.Pa., 2009) (involving intercourse between a thirty-year-old and an eight-year-old).

Neither a significant age disparity nor sufficient scientific/statistical evidence is present here. According to the Criminal Information to which Morales pled guilty, he was nineteen years old at the time of the offense, and his victim was thirteen, three months shy of fourteen-years-old. (Criminal Information, Doc. No. 68-2.) While principled arguments on either side could be made as to whether this difference in age is significant, it is not nearly as wide of a disparity as other cases which have found a serious potential risk of physical injury. Non-forcible intercourse between teenagers simply does not present such an obvious risk of injury as it does when engaged in between an adult and a prepubescent child. Neither is the risk of other physical injury (e.g., pregnancy, sexually transmitted diseases) that might result from such conduct a fact which is a matter of "common sense." Rather, without scientific evidence, a finding that such conduct presents a risk of physical injury comparable to that of the enumerated offenses would be entirely based on conjecture. Id.; see also Shannon, 110 F.3d at 386-89.

In this case, very little scientific or statistical evidence has been presented by the Government, who introduced only one exhibit and made one additional citation in support of its argument. The exhibit, a report written by Carol P. Herbert, entitled *Sexual Abuse of Children*, is inapplicable as its focus is on dispelling "common myths" regarding sexual abuse of prepubescent children, particularly by family members. Neither of these circumstances exist here.

The other article relied upon by the Government is a 2006 survey of statutory rape laws and educational programs intended to address sexual relationships among teenagers, written to "explore how organizations within states and communities work together to approach the issue of statutory rape." The Lewin Group, *Exploring Community Responses to Statutory Rape*, Report to United States Department of Health and Human Services, 2 (Sept. 30, 2006), *available at*

http://aspe.hhs.gov/hsp/08/SR/CommResp.  This is not a scientific study, includes no relevant statistics, and makes only general reference, in its introductory section, to increased incidence of unplanned pregnancy and sexually transmitted disease among "minors."  Id.  These references are insufficient to meet the Government's burden.

The Government also asks that I consider the findings of other courts which are based upon literature that has not been presented in this case.  (Gov't Second Supplemental Mem. of Law, Doc. No. 77, at 5.)  Relying on those findings would be akin to judicial notice.  I decline to do so.  The absence of those studies from the record deprives Defendant of an opportunity to challenge their validity, or to present evidence in opposition.  The Third Circuit has stated that due process requires that evidence considered as a basis for sentencing "have sufficient indicia of reliability to support its probable accuracy."  United States v. Berry, 553 F.3d 273, 280 (3d Cir. 2009) (quoting United States v. Warren, 186 F.3d 358, 365-65 (3d Cir. 1999)).  It is impossible to determine the reliability of evidence which the Court has not reviewed.

The Government has also argued that "the domineering presence of the adult offender . . . 'carries a substantial risk that physical force . . . may be used in the course of committing the offense.'" (Gov't Obj. at 8, quoting United States v. Scudder, 2011 WL 3331823 at *2 (8th Cir. 2011).)  Its argument essentially assumes that if the victim of statutory rape did not consent to intercourse, there exists a "substantial likelihood that the adult may employ force to coerce the child's accession, thereby creating a serious risk that physical injury will result."  Daye, 571 F.3d at 232.  While I would not hesitate to find that such physical coercion involves the use of force and is a crime of violence, there is no evidence in the record showing that there is a substantial risk that such force will be employed when a thirteen-year-old and a nineteen-year-old engage in non-

15

forcible intercourse.  It should again be stressed that force is not required to obtain a conviction under § 3122.1.

Finally, the Government argues that I should consider the intent of the legislature in enacting § 3122.1, asserting that the purpose of the statute is the "physical and psychological protection of young children." (Gov't Obj., at 9, quoting Comm. v. Albert, 758 A. 2d 1149, 1153-54 (Pa. 2000).)  The Seventh Circuit in Shannon correctly identified the problems attendant with inferring such a legislative intent.  110 F.3d at 386-87.  The meaning of § 4B1.1 is a question of federal law, and thus should be applied to particular conduct uniformly and without regard to the potential varying interests of different state legislatures.  See Meader, 118 F.3d at 885, n. 13 ("If statutory rape is to be classified as a crime of violence for purposes of the federal sentencing guidelines, the actionable age should be the same regardless of the state in which the crime occurred.").

It would make little sense to give preference to the legislative history of any particular state in deciding whether, as a matter of federal law, particular conduct involved a serious risk of physical injury.  States may have widely divergent interests in mind when enacting statutory sexual assault statutes.  The prevention of physical injury may or may not be one of those interests.  As noted by the Seventh Circuit, the original purpose of various statutory rape laws "was to protect the virginity of female minors in order, in turn, to protect their marriageability, viewed as a girl's or a woman's most precious asset and one gravely impaired by loss of virginity."  Shannon, 110 F.3d at 387.  This interest does not involve force, violence or the prevention of physical injury.  More recently, the purposes articulated for these laws have included "possible psychological harms incident to early commencement of sexual activity, and possible adverse social and economic

consequences of teenage pregnancy and births out of wedlock," in addition to prevention of pregnancy and sexually transmitted diseases. Id. The divergent purposes served by these laws render statutory intent an unreliable foundation for the conclusion that they were enacted primarily to prevent physical injury.

### III. Conclusions

Based upon the precedent reviewed above and the ages of the Defendant and the victim, I reach the following conclusions.

First, the Government has failed to introduce evidence sufficient to demonstrate that intercourse between a nineteen-year-old and a thirteen-year-old creates a "serious potential risk of physical injury." To the extent that the enumerated offenses of § 4B1.2 should be considered, I find that the risk involved here is not comparable to the risks involved in any of the enumerated offenses. Second, finding that non-forcible intercourse between a nineteen and thirteen-year-old is a crime of violence is not so clearly a matter of "commonsense" as it might be where the offender is an older adult and the victim a prepubescent child. It is not readily apparent that the act of intercourse itself would carry a risk of physical injury, and the Government has failed to introduce sufficient scientific or statistical evidence to sustain its burden with regard to any collateral consequences of intercourse. Finally, Pennsylvania's statutory sexual assault law imposes liability without regard to the actual consent of the victim, or the offender's awareness that the victim is legally incapable of consent by virtue of his or her age. As in Begay, the strict-liability nature of the offense weighs against its classification as a crime of violence warranting the substantial sentencing enhancement applicable to a career offender.

For the reasons stated herein, I decline to find that Pennsylvania's statutory sexual assault

statute is a crime of violence under U.S.S.G. § 4B1.2 where that conviction is based upon intercourse between a nineteen-year-old and a thirteen-year-old, and overrule the Government's objection to the PSR.

       An appropriate order follows.